Stechauner v. Smith Mr. Bradley May it please the Court. Petitioner Mr. Stechauner was in a hospital emergency treatment room where he was subjected to intimidating, threatening presence of at least three police officers and at all times one officer. He was threatened with an x-ray. He was prevented from speaking with his friends and his family, including his mother, who was also threatened with arrest if she attempted to speak to him. And he was given a powerful opiate about 45 minutes before the police arrived, an opiate that's eight times more powerful than morphine. The State's response here is only the self-serving statements of the officers that Mr. Stechauner appeared lucid. In these circumstances, Mr. Stechauner was in custody in the hospital ER treatment room, and the opiates rendered his statements involuntary. The objective facts here render these statements subject to suppression, and Mr. Stechauner is entitled to habeas relief. If this Court finds also that there are factual issues as far as the ineffective assistance of counsel claim, Mr. Stechauner is entitled to a hearing consistent with Penholster and this Court's interpretations of it, because here the State Courts did not adjudicate whether trial counsel's performance was deficient. It only focused on the prejudice prong. Therefore, here, this Court reviews the performance prong of the Strickland Standard de novo. Furthermore, the trial counsel is not entitled to a presumption of reasonableness under the performance prong, because trial counsel did no investigation whatsoever of the additional evidence that should have been brought forward at the suppression hearing that's at issue. That evidence is the medical records that established Mr. Stechauner was given this powerful opiate 45 minutes before the police arrived by IV, as well as these additional witnesses that included not only his family and friends, but third-party neutral witnesses, the treating physician and the treating nurse. Mr. Bradley, is it the position of a petitioner that the trial counsel never talked to the doctor or the nurse? Yes, that's Mr. Stechauner's position. And the record indicates here that the trial counsel did send out an investigator, but that occurred after the suppression hearing, which in this case is called a Miranda Goodchild hearing. That occurred in January. No, he claims that if contacted, that that would be helpful, that they contacted the doctor and the nurse, right? Yes, Judge. Mr. Stechauner. But is there evidence in the record to suggest that the counsel did not contact them? The only thing in the record, Your Honor, is that after the hearing, the suppression hearing, trial counsel said later on in the trial court, on the record, that he sent his investigator to speak with these additional witnesses that Mr. Stechauner wanted. That all occurred after the suppression hearing. All right. And there is, as far as— So isn't built into that the possible suggestion that he talked to the doctor and the nurse and they would not be favorable? There's certainly that. You could draw that reasonable conclusion, but you could also draw the same reasonable conclusion that they could have been helpful, because they were there treating him. They could also testify to the fact that Dilaudid, the drug that he was given through IV. And so turning to the prejudice prong then, two parts here. The medical records, of course, establish that Mr. Stechauner was prejudiced by not introducing the medical records at the suppression hearing because of those opiates. One of the side effects of Dilaudid, the opiate he received, is mental impairment. This evidence was not materially contradicted by the state. The fact that this drug had a mental impairment on Mr. Stechauner while he was being interrogated by the police, at the very least entitles him to a hearing under Penn Holster and this court's opinions in Mosley and Tolliver to determine whether there was prejudice and the effect of omitting the medical record. As for the witnesses then, as Your Honor mentioned, two of them, the doctor and the nurse, were third parties, and the record is silent here whether the trial counsel did talk to them beforehand. But Mr. Stechauner doesn't need to prove his case today here. He just needs to show that there's a reasonable probability of a different outcome, and there is at least a reasonable probability of a different outcome here. The state argues that, in response here, that Mr. Stechauner's mother, her name is Starella Frye, she submitted a declaration. They argue the declaration won't help Mr. Stechauner at all. So Mr. Stechauner certainly disagrees. Her affidavit established two items that are very essential for the custody determination, the first one being that she was prevented from contacting Mr. Stechauner while he was in the hospital being interrogated by the police. The second point there is the threat. She was threatened with arrest if she even attempted to talk to him. So going to that threat prong in the custody determination, if the police are threatening the suspect, that shows that there's interrogation going on, there's custody, and here the only evidence we have is that the officers threatened to X-ray Mr. Stechauner and they threatened his mother. So there's no evidence to the contrary here. So again, trial counsels was deficient in failing to bring forth this evidence at the suppression hearing. Mr. Stechauner's other claim that was certified for appeal is a Miranda claim, and there are three parts here. The first is that contrary to the Supreme Court precedent, the Wisconsin state courts unreasonably applied an incorrect subjective standard when determining custody. Of course, we're aware that the correct standard is an objective standard that weighs multiple factors. Here, looking at the Wisconsin Court of Appeals opinion, there were three factors that the Wisconsin court determined led to believe that Mr. Stechauner was not in custody in the hospital room. Detective Klotsky's subjective statement that Mr. Stechauner was not in custody. It's important to point out he never told Mr. Stechauner that. It was just his own belief. Detective Klotsky's subjective belief that Mr. Stechauner was not a suspect in any particular crime. Again, never told Mr. Stechauner at the time. This is just Klotsky's subjective belief. And third, which is actually an objective factor, that Mr. Stechauner was not handcuffed. Even though this is one of the objective factors, it's not dispositive of the case here. The state courts incorrectly and unreasonably applied a subjective standard here in determining custody when an objective standard should have been applied. If we look at those objective factors then, the clear and convincing evidence shows that he was in custody in the hospital room. One of the key factors is that he was not told that he was free to leave and he was not told that he was in custody. That never happened here. Instead, the officers just began asking questions. A second key factor that's developed in the case law is the location. Here, this interrogation took place in a hospital emergency room treatment room. Mr. Stechauner was wearing a hospital gown and a pair of socks and was hooked up to an IV. And the room, we believe, was likely small. Hospital ER rooms aren't these large, spacious places. Another factor is the threatening presence of police officers. Here there were three at some points, and at all times there was always one officer. Given the fact that we're in an ER treatment room, it's also not unreasonable to believe that one of those officers, or maybe all of them, were blocking the doorway and Mr. Stechauner was not strapped down to the bed, but at least on an IV and wearing a hospital gown, so unlikely that he would be free to take off. Well, he placed himself in that room, right? His actions, he wasn't, the police didn't set up this venue. That's correct, Judge Flom, but he did not call the police. He came to the hospital with a gunshot wound. His friends dropped him off there. He did not call the police, and the evidence shows that when the police arrived, he was not forthcoming. He didn't want to talk to the police, and he didn't want to get his buddy involved because his buddy was also on probation or parole. I mentioned the threatening tone earlier. He was threatened with an X-ray. His mother was threatened with arrest. There's no evidence otherwise here. He was not permitted any outside contact with his family and friends who were either there or nearby. Now, the state correctly points out that he was allowed at one point to call his friend, Mr. Mayers, regarding the location of the gun. However, looking at this phone call, it leads to a determination of custody because it was in furtherance of the interrogation. The entire reason why Mr. Steckoner was allowed to call Mr. Mayers was so that the police could go retrieve this gun, a gun that the police knew at that time matched the description of a gun that had been used in several other crimes by a gentleman who just happened to match the physical characteristics of Mr. Steckoner. Finally, the length, the movement, and the duration of this interrogation lead to a determination that Mr. Steckoner was in custody. The entire length of the interrogation lasted over 16 hours. The hospital room was a short portion of it. From there, though, Mr. Steckoner was handcuffed, placed in a police car, and directed the police officers to where the gun was supposed to be located. After that, he was brought to a police station, and then at the end, he was arrested. There was no break in any of this. Looking at the clear and convincing evidence here, Mr. Steckoner was in custody in the hospital room. So the second prong for the Miranda claim then is interrogation because you have to have custody, you have to have interrogation. And by the way, it's undisputed that Mr. Steckoner was not given his Miranda right at any point during any of this interrogation. It does not appear there's any dispute that Mr. Steckoner was interrogated in the hospital room, so I'll move on to the police car. Mr. Steckoner is discharged from the hospital into police custody. He's handcuffed, and then he's driven around trying to find this gun. It's the act of driving here that's the interrogation. The developed case law is that it doesn't have to be question and answer. Any conduct by the police that is reasonably likely to elicit an incriminating response is an interrogation. Here, when the police handcuffed Mr. Steckoner and placed him in the car, they knew Mr. Steckoner was at least on probation, maybe parole. They knew that there was a string of crimes committed by a man of the unique physical characteristics of Mr. Steckoner. They knew that a sawed-off gun was used in those crimes, and they also knew that the sawed-off gun was used while shooting Mr. Steckoner. So the clear and convincing evidence here establishes that the police officer's actions of driving Mr. Steckoner to that gun were reasonably likely to elicit an incriminating answer, which is a gun, and someone who's on a felon, who's on probation or parole, is not allowed to have a gun. So the driving around was an interrogation as well. All of the statements that Mr. Steckoner made, therefore, were given while he was in custody and being interrogated without being given his Miranda rights. Therefore, all of those statements must be suppressed as fruit of the poisonous tree. Finally, Mr. Steckoner's statements also were involuntary. The state argues that this claim is not certified for appeal. Mr. Steckoner, of course, disagrees. The district court certified for appeal the entire Miranda claim. In the court's opinion, it's page 10 of the appendix attached to the opening brief. The court addresses the Miranda claim, and on page 10 is where the court addresses this involuntariness argument. Therefore, it was certified for appeal. In the hospital room, Mr. Steckoner was given powerful opiates, eight times as strong as morphine. One side effect is mental impairment. These alone render Mr. Steckoner susceptible to coercive police tactics and render his statements involuntary. Likewise, Mr. Steckoner was threatened with an X-ray. You're into your rebuttal time, you know. Yes, thank you, Judge. Threatened with an X-ray and was promised assistance that never materialized. These things also render his statements involuntary. Therefore, Mr. Steckoner is entitled to habeas relief or at the very least a hearing under penholster. Thank you. Thank you, Mr. Brown. Mr. Leroy. May it please the court. Under AEDPA, the state court reasonably held that Steckoner was not in custody in the hospital room and not interrogated in the police car. Therefore, his Miranda claims fail. Further, the state court reasonably held that Steckoner failed to show prejudice under Strickland, and therefore his ineffective assistance of counsel claim also fails. So I'd like to begin with the Miranda claim. The question here is under AEDPA, did the state court unreasonably apply federal law as determined by the Supreme Court? So broadly speaking, there may be good arguments for Mr. Steckoner either being in custody or not being in custody, but because there are good competing arguments on both sides, that does mean the determination is reasonable under AEDPA. So the standard for custody is whether a reasonable person would have felt he was free to terminate the interrogation and leave. So this is a factors test, and my friend on the other side lists 11 different factors from both this court and the Supreme Court to make that determination. Such a test receives even more deference under AEDPA because of the different ways that the court is allowed to weigh the factors depending on the case. So applying the test here, we have no physical restraint from the police to Mr. Steckoner. He went to the hospital voluntarily. He was free to leave. The questioning was not very long in the hospital. They were investigating a shooting, not a crime of Mr. Steckoner. So I'd like to address the X-ray comment, the alleged threat to take an X-ray. That wasn't presented to the state court in the Miranda Goodchild hearings. I believe it comes from the district court record, docket entry 10, page 4, and that's a report from the detective where he says, quote, the hospital was ready to take X-rays to determine if he had ingested the bullets. So I don't think that's a threat meant to overbear Mr. Steckoner's will. I think it's just a clear indication to Mr. Steckoner that ingesting bullets is a serious medical problem, and the hospital is ready to take preventative action. So I mentioned in the brief that many circuits have held that a defendant questioned in the hospital room was not in custody. So we have the Jamison case from the Fourth Circuit, the New case from the Eighth Circuit, and the Berries case from the Tenth Circuit, among others. And so the fact that other circuits on direct review, no less, have held that a defendant in the hospital questioned by the police under the same or more severe circumstances, the fact that those courts have held there wasn't custody strongly shows the state court was reasonable in its determination here. So moving to the next Miranda claim about interrogation in the police car, the standard is whether the defendant was subjected to express questioning or words or actions the police should reasonably know would lead to an incriminating response. The state court here made a factual conclusion that Mr. Steckoner's statements were not supplied as a result of police interrogation or questioning. There wasn't action, verbal action, that resulted from police that led Mr. Steckoner to make his statements. So that factual conclusion is given extreme deference under AEDPA, excuse me, and that there's just simply nothing in the record to show the police made any statements in the police car. And my friend on the other side says that it's the driving to the location itself that counts as the interrogation, that those actions would have reasonably likely to lead to an incriminating response. But I don't think that's true because, as the state court held, Mr. Steckoner was not suspected of a crime at this point. So the police's actions were meant to secure a dangerous weapon that was available to children, not to interrogate Mr. Steckoner. And moreover, there isn't a Supreme Court case with similarities that this type of behavior counts as interrogation, which just reiterates the point that it was reasonable for the state court to conclude it was not interrogation. So that's the Miranda claims. I'd like to move to the Strickland claim, and Mr. Steckoner cannot show prejudice here. Again, we're under AEDPA review, and it's only if the state court unreasonably applied Supreme Court precedent. The standard for prejudice is whether there's a reasonable probability the result would have been different. So the first claim is with the eight witnesses. And my friend admits that Mr. Steckoner's lawyer talked to the witnesses now after the hearing, but the fact that he talked to him at all is relevant for the prejudice inquiry because Mr. Steckoner has the burden to show it, and he hasn't put forward at the state court or to this court what those witnesses would have actually said. So he says in his brief that they would have testified whether Mr. Steckoner was handcuffed. So this is with the doctor and the nurse. But what he needs to actually say is what they would have testified to and then back it up with alleged facts. An affidavit would be certainly the most helpful, but at least say when he saw the doctor and the nurse, if he saw them, when the police were present. Remember, he was awaiting discharge at the time in the hospital, so it's very likely the doctor and the nurse were done with Mr. Steckoner and that perhaps an administrator would have discharged him. He never says if they actually clearly saw a handcuff. He's just speculating on all this, and that's not enough to show prejudice under Strickland. And it's the same thing with the affidavit with his mother. She says that she didn't see him in the hospital room. That's not enough to make a reasonable probability that the proceeding would have been different. And just to press the point a bit further, in Mosley, which is a case from this court, which my friend relies upon heavily, the court ruled for the habeas petitioner on a similar Strickland claim, but there are affidavits there from the witnesses, and that was crucial to the court's holding. And again, that's just not present here. And so finally, I'd just like to address the hospital record. He claims it would show that he was overpowered by pain medication, which would help in the custody determination. But the hospital record more likely would have hurt his case because it severely undermines his claim that he was intoxicated when he reached the hospital to begin with. Now, remember, he claimed that he took 15 shots of Hennessy, shared three joints, took 22 sleeping pills and a half pill of ecstasy in the first two hours before getting to the hospital. But the record says that he was alert and cooperative, had no altered vision, was discharged in good condition despite the gunshot wound, and then was given crutches to crutch himself out of the hospital. But there's no way a hospital would give someone with that many narcotics in his system crutches to crutch himself out. So the record does show he received the pain medication, but it doesn't say how the pain medication affected him in this case. And that's the relevant consideration is whether or not his will was overborne by the medication. So the record just doesn't show that here. So even if the record were admitted, it would not have been enough to make a reasonable probability of a different outcome. So unless the court has any questions, I'll rest on these arguments and the arguments in my brief. Thank you, Mr. LeBlanc. Mr. Bradley? Thank you, Judge. Just two quick points here. Addressing the prejudice prong, the reason why there are no affidavits here is because of his trial counsel's deficient performance. They didn't call these people. I believe the state here is trying to hold Mr. Steckoner to the standard of an attorney when he made his habeas petition, but he was pro se at that time. So this court has to give him deference and has to give him an opportunity, in this case, an opportunity through a pinholster hearing to develop what those facts, what those witnesses would have said, as well as the impact that the drugs might have had on him. As for the custody determination here, again, what we're looking at here is the state court's application. They applied the wrong standard. They applied a subjective standard relying on Detective Kowalski's beliefs. If we look at the objective factors and look at the clear and convincing evidence here, we're not asking this court to reweigh the factors by any means, but the state court never even weighed the factors. They placed all the emphasis on one, and that was incorrect. If you look at them, the totality of the factors that I explained earlier, they all weigh in favor of a finding of custody here. And then finally, as mentioned in our brief, I just want to point out, our reply brief, all of the cases the state relies upon that they say hold that interrogation in the hospital room does not constitute custody, none of them actually hold that. The vast majority of them don't even address these factors that are at issue. And in the 1-7th Circuit case here that the state cites, I believe it was Ethelde versus Davis, in the trial court, the trial counsel conceded that his client was not in custody, so that was never actually at issue. I'm sorry, it was McNary. McNary versus Lemke was the case, the state cites. It was never at issue whether interrogation in the hospital was custody, so there's no case on point here that this court needs to look at those factors. And the clear and convincing evidence shows that he was in custody. Therefore, Mr. Steckhoner is entitled to habeas relief or at the very least a penholster hearing. Thank you. Thank you, Mr. Bradley. Thanks to all counsel. The case is taken under advisement and the court will take a short recess. Thank you. Thank you.  Okay. Thanks. You should still have this. Okay. Thank you. No. It's Carl Chambers. 5824. Thank you.